IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DREW KILLEN,[1] | § | No. 112, 2024 |
| | § | |
| Respondent Below, | § | Court Below—Family Court |
| Appellant, | § | of the State of Delaware |
| | § | |
| v. | § | File No. 23-07-1TK |
| | § | |
| DEPARTMENT OF SERVICES | § | Petition No. 23-15448 |
| FOR CHILDREN, YOUTH, AND | § | |
| THEIR FAMILIES/DIVISION OF | § | |
| FAMILY SERVICES, | § | |
| | § | |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: July 24, 2024
Decided: September 23, 2024

Before **SEITZ**, Chief Justice; **VALIHURA** and **GRIFFITHS**, Justices.

## ORDER

After consideration of the appellant's brief and motion to withdraw filed by the appellant's counsel under Supreme Court Rule 26.1(c), the responses, and the Family Court record, it appears to the Court that:

(1)    This is an appeal from the Family Court's order dated February 19, 2024, that terminated the appellant's ("Father") parental rights as to his child born in November 2022 (the "Child"). The Family Court's order also terminated the

---

[1] The Court previously assigned a pseudonym to the appellant pursuant to Supreme Court Rule 7(d).

parental rights of the Child's mother ("Mother"). We focus on the facts in the record as they relate to Father.

(2) Father's counsel has filed a brief and a motion to withdraw under Supreme Court Rule 26.1(c). Father's counsel asserts that, based upon a conscientious review of the record, there are no arguably appealable issues. Counsel informed Father by telephone of the provisions of Rule 26.1(c) and asked Father to provide an address where counsel could send him a copy of the motion to withdraw and the accompanying brief. Counsel also informed Father of his right to supplement counsel's presentation. Counsel states that Father refused to disclose his address; told counsel that Father would not be providing any points for the Court's consideration; told counsel not to bother Father again; and threatened that he would be "coming after" counsel. Father has not submitted any issues for the Court's consideration. The Department of Services for Children, Youth, and Their Families, Division of Family Services ("DFS") as appellee and the Office of the Child Advocate have responded to the Rule 26.1(c) brief and argue that the Family Court's judgment should be affirmed.

(3) At his birth in November 2022, the Child tested positive for illegal drugs; Mother admitted to using heroin during her pregnancy. After receiving a hotline report expressing concern for the Child's welfare, DFS implemented a safety plan under which the Child would reside with Father's sister ("Paternal Aunt") and

2

her husband ("Paternal Uncle") until Mother and Father could address substance-abuse issues and other concerns as to their ability to care for the Child. After Mother and Father removed the Child from Paternal Aunt's home without permission, DFS initiated a dependency proceeding seeking custody of the Child. The court transferred custody of the Child to DFS, and he continued living with Paternal Aunt and Uncle.

(4) The mandated hearings ensued.[2] At the preliminary protective hearing on December 19, 2022, Father stipulated that the Child was dependent in his care due to lack of appropriate housing. At the dispositional hearing on January 10, 2023, the court reviewed the case plan that DFS had developed for Father. The case plan required Father to complete mental-health and substance-abuse evaluations and follow any recommendations for treatment; complete a parenting class; seek and maintain employment and stable housing; and resolve criminal charges that had been pending against him since shortly before the Child's birth. The court approved those elements of Father's case plan but directed DFS to remove elements requiring Father to participate in a domestic violence assessment and an anger management program because Mother and Father both denied that there was domestic violence in their

---

[2] *See Kline v. Del. Div. Family Servs.*, 2023 WL 2259101, at *1 n.3 (Del. Feb. 28, 2023) ("When a child is removed from home by DFS and placed in foster care, the Family Court is required to hold hearings at regular intervals under procedures and criteria detailed by statute and the court's rules." (citing 13 *Del. C.* § 2514; DEL. FAM. CT. R. CIV. PROC. 212-19)).

relationship and there was no evidence of protection-from-abuse or no-contact orders between them.

(5)     Following a review hearing on March 14, 2023, the Family Court determined that the Child remained dependent.  As to Father, the court emphasized the substance-abuse component of his case plan, finding that Father had tested positive for marijuana, cocaine, and various forms of opiates and had not engaged in adequate treatment.  Father had made progress on other elements of his case plan, including engaging in regular, appropriate visits with the Child; completing a mental-health evaluation; and enrolling in a parenting class.  Father had not obtained employment.  Father and Mother were living with Father's godmother, in a home that DFS had determined was appropriate for the Child.  The court approved the continued goal of reunification of the Child with his parents.

(6)     By the time of a review hearing on April 25, 2023, the parents no longer had stable housing.  Moreover, evidence from the program where Father received drug treatment reflected that all of Father's drug screenings had been positive for cocaine, and most had been positive for marijuana.  Moreover, Father had not regularly attended his medication-assisted-treatment appointments.  The program had issued administrative warnings and would discharge him from treatment if he had one more unfavorable screening result.  Father's criminal charges remained pending.

4

(7) Following a permanency hearing on July 5, 2023, the Family Court determined that the Child remained dependent as to Father because Father did not have housing; did not have employment or another legal source of income; and continued to misuse substances, including Percocet. His criminal charges also remained pending. Because Father had not made sufficient progress on his case plan in the seven months that the infant Child had been in DFS custody, the court approved DFS's motion to change the permanency plan to termination of parental rights ("TPR").

(8) On October 2, 2023, the court held a TPR hearing. Mother did not appear. Father tendered a written consent to the termination of his parental rights. After a detailed colloquy with Father, the court accepted the consent. The court then heard evidence as to termination of Mother's parental rights. Following the hearing, within the two-week period during which a parent may revoke a consent to termination of parental rights,[3] Father revoked his consent. The court therefore resumed the TPR hearing on November 29, 2023.

(9) At the beginning of the November 29, 2023 hearing, at Father's request, Father's counsel filed a motion for recusal of the Family Court judge. Father asserted that the judge was not impartial because she had ordered him to be incarcerated for failure to pay child support in proceedings relating to his other

---

[3] 13 *Del. C.* § 1106B(a)(1).

children many years earlier, when the judge had been a Family Court commissioner. Father also questioned the judge's impartiality because she had presided over custody proceedings involving Mother and her other children.

(10) Applying the analysis set forth in *Los v. Los*,[4] the judge denied the motion. The judge determined that she did not have any subjective bias or prejudice in the matter and that there was no objective appearance of bias or prejudice. In reaching those conclusions, she emphasized that she had no memory of Father from prior proceedings, adjudicating matters against him, or imprisoning him. As to her knowledge of Mother, the judge observed that Family Court has a policy of assigning a "family"—as defined by the mother—to a particular judge so that the judge can develop a comprehensive understanding of the family when deciding matters before the court. The judge also noted the principle, as discussed by this Court in *Los*, that "[p]revious contact between the judge and a party, in the same or a different judicial proceeding, does not require automatic disqualification."[5] Rather, to be

---

[4] 595 A.2d 381 (Del. 1991); *see Jones v. State*, 940 A.2d 1, 18 (Del. 2007) (describing the process established in *Los* as follows: "[W]hen confronted with a motion to recuse, the trial judge must engage in a two-step analysis to determine whether disqualification is appropriate. The first step requires the judge to be subjectively satisfied that she can proceed to hear the cause free of bias or prejudice concerning that party. Even if the judge is satisfied that she can proceed to hear the matter free of bias or prejudice, the second step requires the judge to examine objectively whether the circumstances require recusal because there is an appearance of bias sufficient to cause doubt as to the judge's impartiality." (citations and internal quotations omitted)); *see also id.* at 18 n.82 ("In *Los*, we also explained the importance of finding actual bias against a party to prevent a litigant from 'judge shopping' through the disqualification process.").
[5] *Los*, 595 A.2d at 384.

disqualifying, "the alleged bias or prejudice of the judge 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from [her] participation in the case.'"[6]

(11) The evidence presented at the TPR hearing reflected that Father had continued to engage in regular, appropriate visits with the Child at Paternal Aunt's home and had completed a parenting class. He also continued to express his sincere desire to be in the Child's life. However, Father was unhoused and lacked employment or other means to obtain housing for the Child. Indeed, Father testified that he was not currently in a position to take physical custody of the Child; he did not offer any concrete or specific plan or timeline for doing so. Father also had not consistently engaged in substance-abuse treatment, despite the screenings showing his use of illegal drugs. The evidence showed—and Father acknowledged—that Paternal Aunt and Uncle were excellent caregivers for the Child and facilitated the Child's contact with Father and other family members.

(12) On February 19, 2024, the Family Court issued an order terminating Father's parental rights. The court determined that DFS had established, by clear and convincing evidence, a statutory basis for terminating Father's parental rights for failure to plan adequately for the Child within the statutory timeframe.[7] As to

---

[6] *Id.* (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)).
[7] *See* 13 *Del. C.* § 1103(a) ("The procedure for termination of parental rights for the purpose of adoption . . . may be initiated when it appears to be in the child's best interest and 1 or more of the

failure to plan, the court found that Father had satisfied the elements of his case plan relating to maintaining contact with the Child and completing a parenting course but had not satisfied the other elements of his case plan. The court also found, by clear and convincing evidence, that DFS had made reasonable efforts to reunify the family. Applying the best interest factors,[8] the Family Court found that DFS had established, by clear and convincing evidence, that it was in the Child's best interests to terminate Father's parental rights. The court found that, although Father had maintained regular contact with the Child and was appropriate and loving in his direct interactions with the Child, the Child's primary relationships were with Paternal Aunt and Uncle, who had cared for him since his birth.[9] The Child was well-adjusted to their home and flourishing in their care, and Father was not able, and would not likely soon be able, to provide the Child with a home.[10] Father continued to use illegal substances[11] and had not met his responsibilities to care for the Child's needs.[12] Father's criminal charges also remained pending.[13]

---

following grounds exist: . . . (5) . . . A child is in DSCYF custody . . . and the respondent is not able or has failed to plan adequately for the child's physical needs or mental and emotional health and development, and at least 1 of the following conditions are met: . . . b. The child has been in DSCYF custody . . . for at least 6 months and the child came into care as an infant. . . .").

[8] *See id.* § 1103(a) (providing that parental rights may be terminated if one of several statutory grounds is established and "it appears to be in the child's best interest"); *id.* § 722(a) (setting forth factors that the court may consider when determining the best interests of a child).

[9] *Id.* § 722(a)(3).

[10] *Id.* § 722(a)(4).

[11] *Id.* § 722(a)(5).

[12] *Id.* § 722(a)(6).

[13] *Id.* § 722(a)(8).

(13) On appeal, this Court is required to consider the facts and the law as well as the inferences and deductions made by the Family Court.[14] We review legal rulings *de novo*.[15] We conduct a limited review of the factual findings of the trial court to assure that they are sufficiently supported by the record and are not clearly erroneous.[16] If the Family Court correctly applied the law, then our standard of review is abuse of discretion.[17]

(14) The statutory framework under which the Family Court may terminate parental rights requires two separate inquiries.[18] First, the court must determine whether the evidence presented meets one of the statutory grounds for termination.[19] When the statutory basis for termination is failure to plan, the Family Court must also find proof of at least one additional statutory condition.[20] Second, if the Family Court finds a statutory basis for termination of parental rights, then the court must determine whether terminating parental rights is in the child's best interest.[21] Both of these requirements must be established by clear and convincing evidence.[22]

---

[14] *Wilson v. Div. of Family Servs.*, 988 A.2d 435, 439-40 (Del. 2010).
[15] *Id.* at 440.
[16] *Id.*
[17] *Id.*
[18] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).
[19] *Id.* at 537. *See* 13 *Del. C.* § 1103(a) (listing the grounds for termination of parental rights).
[20] 13 *Del. C.* § 1103(a)(5)a-e (listing additional conditions, including that a child has been in DFS custody for at least six months if the child came into care as an infant).
[21] *Shepherd*, 752 A.2d at 537. *See* 13 *Del. C.* § 722(a) (listing factors for consideration when determining the best interests of the child).
[22] *Powell v. Dep't of Servs. for Children, Youth & Their Families*, 963 A.2d 724, 731 (Del. 2008).

9

(15)  Father has not submitted any points for this Court's consideration on appeal.  Father's counsel represents that he has determined that no arguably appealable issue exists.  After careful consideration of the parties' positions and the record on appeal, we conclude that the judgment of the Family Court should be affirmed on the basis of the Family Court's determination, as set forth in its Decision and Order dated February 19, 2024, that there was clear and convincing evidence that Father had failed to plan adequately for the Child's needs, that DFS had made reasonable reunification efforts, and that termination of Father's parental rights was in the best interests of the Child.  Those conclusions are well-supported by the record.  We therefore affirm.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.  The motion to withdraw is moot.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Chief Justice